NOTICE
Decision filed 06/17/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230222-U

NO. 5-23-0222

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| OPAL PAGEL, Independent Administrator of the Estate of Dora L. Sly, Deceased, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 22-EV-14 |
| DENNIS ALLSOP, | ) ) ) | Honorable Chad M. Miller, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's order granting petitioner possession of the real estate in favor of decedent's estate.

¶ 2    Respondent, Dennis Allsop, appeals the Effingham County circuit court's April 4, 2023, order denying Dennis's motions to reconsider the court's February 9, 2023, order, granting petitioner, Opal Pagel, as independent administrator of the Estate of Dora L. Sly, possession of the premises in dispute. For the following reasons, we affirm.

¶ 3                                    I. Background

¶ 4    We limit our recitation to those facts relevant to our disposition of this appeal. On July 1, 2021, decedent, Dora L. Sly, died intestate. At the time of her death, Dora and Dennis lived at Dora's home located at 12676 North 900th Street, Effingham, Illinois (premises). On August 30,

1

2021, the probate court appointed Opal Pagel, Dora's sister, as independent administrator of the Estate of Dora L. Sly.

¶ 5    On June 3, 2022, Opal served Dennis a "30-Day Notice to Terminate Tenancy" to vacate the premises on or before July 2, 2022. Dennis failed to vacate the premises and maintained possession of the premises.

¶ 6    On July 8, 2022, Opal filed a complaint for eviction against Dennis requesting that the circuit court grant Opal immediate possession of the premises. Dennis was served with a summons for eviction on July 13, 2022.

¶ 7    On January 9, 2023, the circuit court held a hearing on Opal's complaint for eviction. The following evidence was adduced. Opal testified that Dora, alone, owned the premises as evidenced by a warranty deed on the property. Following Dora's death, Opal attempted to take possession of Dora's property from Dennis on multiple occasions to sell the premises, pay outstanding expenses, including property taxes, and distribute remaining profits to Dora's heirs. Dennis refused to leave the premises. As a result, Opal served Dennis with a 30-day notice to vacate; however, Dennis refused to leave the premises.

¶ 8    On cross-examination, Opal acknowledged that Dennis lived at the premise for years prior to Dora's death. Opal testified that Dennis paid property taxes on the premises for tax years 2019 and 2020; however, property taxes for tax years 2021 and 2022 were overdue. Opal testified that she requested that Dennis leave the premises sometime between Dora's death and her burial in July 2021, but Dennis refused. Opal rested.

¶ 9    Next, counsel for Dennis called Dennis, who testified to the following. Dennis and Dora dated for almost 32 years before her death in July 2021. Dennis and Dora never married but lived together in the premises for eight years. Dennis, a carpenter by trade, believed he paid property

2

taxes in 2016. According to Dennis, Dora was unemployed, stating, "There wouldn't have been a house if I hadn't moved in there." Dennis paid utilities, delinquent taxes, performed work on the roof, windows, and doors, and also painted the home. Acknowledging that he did not own the home, Dennis claimed he paid expenses and improved the home because he "figured [he] would be there until [he] died." Counsel for Dennis then asked Dennis how much money he paid in taxes for the residence, at which time counsel for Opal objected. The circuit court sustained the objection and stated the following:

> "THE COURT: And I have an issue of relevance for today. I'll mimic the comment I made earlier. I have a deed. I haven't heard anything about a will that would transfer property. Never a marriage. I think the money, I'll hear a lot of this on another date for an estate claim proceeding."

Counsel for Dennis argued that Dennis's eight years of tenancy were relevant, requesting that the court "select an equitable amount for [Dennis] to pay on a temporary basis so the estate is not experiencing waist [*sic*], and then proceed in the estate case." The court responded that the issues before the court were ownership interest and right to possession concerning Opal's complaint to evict Dennis. Counsel for Dennis then moved to admit into evidence the Illinois Supreme Court's Amended Order, M.R. 30370, concerning the Illinois Court-Based Rental Assistance Program in response to the COVID-19 pandemic (Exhibit A) (Ill. S. Ct., M.R. 30370 (eff. Oct. 3, 2022)). Over counsel for Opal's objection, the court admitted Exhibit A into evidence. Counsel for Dennis argued that the summons for eviction failed to include the notice to tenants concerning the Illinois Court-Based Rental Assistance Program, in violation of Illinois Supreme Court Order, M.R. 30370 (*id.*). On cross-examination, Dennis acknowledged that he never signed a lease to occupy the premises or possessed ownership in the premises. Dennis rested.

3

¶ 10     The circuit court then heard argument from parties. Counsel for Opal clarified that Opal did not expect past-due rent from Dennis. Dora's estate, through Opal, requested possession of the premises to prepare the home for sale and pay outstanding expenses on the home. Counsel for Dennis argued that Dennis would like to purchase the home. In addition, counsel for Dennis contended that Dennis "was not served with any kind of notice with regard to his rights that's required to be attached to the summons." Counsel for Dennis further argued that the order pertained to all summonses issued in residential eviction cases, "whether they are rent based or not."

¶ 11     Counsel for Opal agreed that the notice of tenant rights concerning the Illinois Court-Based Rental Assistance Program must accompany the summons but denied that the issue before the circuit court was jurisdictional. The court responded:

> "THE COURT: The Supreme Court Rules are to be followed but if it's not jurisdictional, then there is nothing removing the case from going forward today. Do you agree with me on that?
>
> MR. CONNOR [Counsel for Dennis]: It does not [a]ffect the Court's jurisdiction over the Defendant or the property.
>
> THE COURT: If this was an allegation of failure to give notice of other alternatives to be removed when there is rent based, I would be more persuaded. If they are asking for $2,000 in rent and hadn't notified him of his ability to reach out to certain programs without those—
>
> MR. CONNOR: Respectfully, Judge, in reading it, it doesn't say that. It says all summons issued in residential eviction cases shall include the attached."

The court found it inequitable to provide Dennis, a longtime resident of the property, with a standard 21-day or 30-day removal from the premises. The court noted that Dennis did not pay rent but had maintained the property in the past, and no evidence showed Dennis destroyed the property or diminished the value for the estate. The court further noted that the warranty deed

4

showed that Dora, alone, owned the premises. As such, the court granted Opal, as administrator of Dora's estate, possession of the premises but reserved ruling on the date of possession.[1]

¶ 12    Following further argument by the parties on February 7, 2023,[2] the circuit court entered a written order titled, "Judgment for Possession," on February 9, 2023, granting Opal, as administrator of Dora's estate, possession of the premises. The court also stayed the judgment for possession pursuant to section 9-110 of the Code of Civil Procedure (735 ILCS 5/9-110 (West 2020)), ordering Dennis to vacate the premises no later than April 10, 2023, at 10:00 p.m. In the event Dennis failed to vacate on time, the court ordered the Effingham County Sheriff's Office to assist in the eviction and dispossession of Dennis and his personal belongings.

¶ 13    On February 14, 2023, Dennis filed a motion to reconsider, rehear, or for a new trial. On March 9, 2023, Dennis filed an amended motion to reconsider, arguing that the circuit court erred by failing to enforce the Illinois Supreme Court's Order, M.R. 30370, which required summons in all residential eviction cases to include "prescribed forms giving notice" to tenants of their rights in an eviction case as provided by the Illinois Court-Based Rental Assistance Program.

¶ 14    On April 4, 2023, the circuit court held a hearing on Dennis's motions, which the court denied. The court ruled its February 9, 2023, judgment for possession order was effective April 10, 2023.[3] In denying Dennis's motions, the court's docket entry stated the following:

"MOTION TO RECONSIDER IS DENIED—SUPREME COURT RULES ARE MADE TO BE FOLLOWED HOWEVER IN THIS MATTER THE LACK OF ATTACHMENT OF THE REQUIRED RENTAL ASSISTANCE LANGUAGE DID NOT PREJUDICE

---

[1]Following the court's ruling, the circuit court consolidated the estate claim (22-P-72) and eviction claim.

[2]The record on appeal does not contain a report of proceedings from this hearing.

[3]The record on appeal does not contain a report of proceedings from this hearing. A docket entry contained in the record on appeal indicated that the parties acknowledged the absence of a court reporter at the hearing.

5

THIS RESPONDENT AS THERE WAS NO LEASE OR BACK RENT AND THE MATTER INVOLVED AN INDIVIDUAL REMAINING WITHIN PROPERTY AFTER THE DEATH OF THE PREVIOUS OWNER ***."

¶ 15 On April 6, 2023, Dennis filed a timely notice of appeal and a motion to stay enforcement. The circuit court's April 11, 2023, docket entry indicated that the court granted Dennis's motion to stay enforcement, stating that Dennis "MAY CONTINUE TO RESIDE ON THE PREMISES" and maintain the property during the pendency of his appeal in the eviction case. The court ordered Dennis to immediately notify Opal in the event Dennis vacated the premises.

¶ 16                                    II. Analysis

¶ 17 We note that the parties do not dispute that the July 13, 2022, summons for eviction did not contain the relevant notice to Dennis concerning the Illinois Court-Based Rental Assistance Program. Due to this failure, Dennis argues that the circuit court erred by granting judgment in favor of Opal, where the evidence demonstrated that the summons for eviction violated Illinois Supreme Court Order, M.R. 30370. Additionally, Dennis argues that the court erred by finding that Illinois Supreme Court Order, M.R. 30370 applied only to evictions based on nonpayment of rent. We cannot agree.

¶ 18 Although an order issued by the Illinois Supreme Court is not a statute enacted by the Illinois legislature, the interpretation of a supreme court order should follow the same guidelines as statutory interpretation. *Longstreet v. Cottrell, Inc.*, 374 Ill. App. 3d 549, 552 (2007). The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). We look to the statutory language, which given its plain and ordinary meaning, is the best indication of intent. *Id.* "In giving effect to legislative intent, the court should consider, in addition to the statutory language, the

6

reason for the law, the problems to be remedied, and the objects and purposes sought." *People v. Donoho*, 204 Ill. 2d 159, 171-72 (2003). Issues involving the interpretation of a statute present questions of law that courts review *de novo. Paris v. Feder*, 179 Ill. 2d 173, 177-78 (1997).

¶ 19 On September 13, 2021, the Illinois Supreme Court initially entered an order concerning the Illinois Court's Response to COVID-19 Emergency/Court-Based Rental Assistance Program. Ill. S. Ct., M.R. 30370 (eff. Sept. 21, 2021). On September 20, 2022, the Illinois Supreme Court entered an amended order (Ill. S. Ct., M.R. 30370 (eff. Oct. 3, 2022) (new material underscored and deleted material struck through), which stated the following:

"1. All summons issued in residential eviction cases shall include the attached, or substantially similar, notice regarding the Court-Based Rental Assistance Program in English and Spanish. The notices shall be attached to a copy of the summons filed with the Clerk of the Circuit Court. Local Circuit Courts may modify ~~this notice~~ these notices with more relevant local information, if possible.

2. This order shall remain in effect until further order of the Court."

¶ 20 Equally important are the details contained in the notice concerning the Illinois Court-Based Rental Assistance Program that the Illinois Supreme Court Order, M.R. 30370 references. Specifically, the notice referenced in M.R. 30370 informs a tenant that they "may be eligible for rental assistance" if they answer " 'yes' " to at least one of the following questions: (1) Are you in eviction court because you fell behind on rent?; (2) Did you lose income or suffer financial hardship because of COVID-19?; or (3) Are you at risk of becoming homeless? The notice then provides two boxes. The box on the left lists eight "Tenant Documentation Requirements," which include (1) government-issued photo ID; (2) proof of address; (3) proof of household income; (4) rent details and amount past due; (5) proof of public assistance, if applicable; (6) current signed

7

lease, if available; (7) eviction court papers (complaint/summons); and (8) valid email addresses for tenant and landlord. The notice notes that proof of citizenship is not required. Next, the box on the right lists seven "Housing Providers/Landlords Documentation Requirements," which included (1) proof of ownership; (2) proof of unpaid rent; (3) current signed lease, if available; (4) proof of identity or limited liability company, certificate of good standing, or articles of incorporation; (5) fully executed and current property management agreement, if payment made to a property manager; (6) eviction court papers (complaint/summons); and (7) valid email addresses for tenant and landlord.

¶ 21    Our review of both M.R. 30370 and the attached notice concerning the Illinois Court-Based Rental Assistance Program demonstrates the Illinois Supreme Court's intention to provide rental assistance to tenants in response to the COVID-19 pandemic. Dennis correctly indicates that M.R. 30370 states that a notice is required in "[a]ll summons issued in residential eviction cases." However, this court must also consider the reason for the law, the problems to be remedied, and the objects and purposes sought. *Donoho*, 204 Ill. 2d at 171-72. A review of the notice indicates that the Illinois Supreme Court required the notice attached to a summons for eviction to inform tenants of the possibility of rental assistance in an effort to prevent evictions and increase housing stability during, and as a result of, the COVID-19 pandemic.

¶ 22    Here, Opal's reasoning behind filing the complaint and summons for eviction against Dennis was unrelated to the COVID-19 pandemic. Dennis neither paid rent nor presented a signed written lease. As such, Opal did not file the complaint and summons for eviction seeking past-due rent. Rather, Opal sought to evict Dennis following Dora's sudden death. As administrator of Dora's estate, Opal sought to obtain possession of the property to administer the sale of Dora's home to pay outstanding expenses, including outstanding real estate taxes, and distribute any

8

remaining funds to Dora's heirs. As such, our reading of M.R. 30370 indicates applicability where past-due rent is at issue and a current signed lease exists.

¶ 23　We note that even in the event that Dennis received the property tenant notice, Dennis would have been ineligible for the program. As the circuit court correctly determined, Dennis did not pay rent, thus, no past-due amount existed, he did not have a signed lease, and the eviction proceedings ensued, not because of the COVID-19 pandemic, but Dennis's refusal to vacate following the sudden and unexpectant death of Dora, the rightful property owner as indicated on the warranty deed to the property. Thus, we cannot say that the circuit court erred by granting Opal possession of the premises in favor or Dora's estate and denying Dennis's motion to reconsider.

¶ 24　　　　　　　　　　　　III. Conclusion

¶ 25　For the foregoing reasons, we affirm the circuit court of Effingham County granting Opal possession of the premises in favor of Dora's estate and denying Dennis's motion to reconsider.

¶ 26　Affirmed.